STATE OF MINNESOTA

IN SUPREME COURT

A14-1992
A15-0064

Court of Appeals                                                          Stras, J.
                                         Took no part, Hudson, Chutich, JJ.


McCullough and Sons, Inc.,

                 Appellant,

vs.                                                      Filed:  August 10, 2016
                                                      Office of Appellate Courts
City of Vadnais Heights,

                 Respondent.

_____


Mark Essling, North Branch, Minnesota; and

Andrew M. Essling, Essling Law Office, LLC, Scandia, Minnesota, for appellant.

Caroline Bell Beckman, James C. Erickson, Jr., Erickson, Bell, Beckman & Quinn, P.A., Roseville, Minnesota, for respondent.

Susan L. Naughton, League of Minnesota Cities, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

_____


S Y L L A B U S

The court of appeals lacked jurisdiction over an appeal from an order denying summary judgment.

Dismissed, vacated, and remanded.

Considered and decided by the court.

O P I N I O N

STRAS, Justice.

This case requires us to determine if, and under what circumstances, Minnesota's appellate courts have jurisdiction to review an order denying summary judgment to one of the parties in a civil case. Here, the City of Vadnais Heights ("the City") imposed an assessment on real property owned by McCullough and Sons, Inc. ("McCullough"). On appeal to the district court, the City filed a motion for summary judgment seeking dismissal of the action based on McCullough's failure to file a written objection to the proposed assessment. The district court denied the City's motion, but the court of appeals reversed. *McCullough & Sons, Inc. v. City of Vadnais Heights*, 868 N.W.2d 721, 728 (Minn. App. 2015). Because the court of appeals lacked jurisdiction over the City's appeal, we dismiss the appeal, vacate the court of appeals' decision, and remand to the district court.

I.

McCullough owns a 9-acre parcel located in the City of Vadnais Heights. The parcel is contaminated by hazardous waste from a hospital that previously occupied the site. Development of the property is not economically viable because the cost to remove the waste exceeds the parcel's value. McCullough currently uses the property to display billboard signs, but the land is otherwise vacant. McCullough has been unable to find a buyer for the property for the last 15 years.

In 2013, the City proposed a road-improvement project to serve a new commercial development near McCullough's parcel. The City informed McCullough through a written notice that the proposed assessment for its share of the improvements was approximately $158,000. The notice also stated that the Vadnais Heights City Council would discuss the project and its funding at a hearing on July 17, 2014. James McCullough, a shareholder of McCullough, attended the hearing and spoke against the proposed assessment, but the company did not file or present a written objection. At the end of the hearing, the City adopted the proposed assessment with one modification that is not relevant here.

In accordance with the requirements of Minn. Stat. § 429.081 (2014), McCullough appealed the City's decision by serving a notice of appeal upon the mayor of Vadnais Heights and then filing a copy of the notice of appeal with the Ramsey County District Court. Early in the litigation, the City filed a motion for summary judgment in which it argued that McCullough was precluded from appealing because it had failed to file a written objection with the "municipal clerk prior to the assessment hearing" or present a written objection "to the presiding officer at the hearing." Minn. Stat. § 429.061, subd. 2 (2014) (stating that "[n]o appeal may be taken as to the amount of any assessment" without a written objection). The court denied the City's motion, concluding that the statute did not require McCullough to submit a written objection to the proposed assessment in order to preserve its right to file an appeal.

The City appealed twice, once from the district court's denial of its motion for summary judgment and again after the court issued an order following an evidentiary hearing in which it determined that McCullough had "perfected its appeal by objecting to

3

the special assessment."[1]  The court of appeals consolidated the two appeals.  On the merits, the court of appeals reversed the district court, holding that a party opposed to a proposed assessment must object in writing before or at the assessment hearing to preserve its right to appeal the assessment to the district court.  *McCullough*, 868 N.W.2d at 727; *see also* Minn. Stat. §§ 429.061, subd. 2, 429.081 (2014) (requiring a "written objection" to appeal the amount of an assessment).

After granting McCullough's petition for review but before holding oral argument, we issued an order asking the parties to be prepared to discuss whether the district court's order denying summary judgment was immediately appealable.  *McCullough & Sons, Inc. v. City of Vadnais Heights*, Nos. A14-1992, A15-0064, Order (Minn. filed Jan. 28, 2016). McCullough then submitted a supplemental memorandum along with a motion asking us to accept the filing.  Following oral argument, we granted McCullough's motion, but did not address its argument that appellate jurisdiction over the case is lacking.  We also gave the City the option to respond in writing to McCullough's supplemental memorandum, which it did by arguing in its own memorandum that jurisdiction exists over the appeal. *McCullough & Sons, Inc. v. City of Vadnais Heights*, Nos. A14-1992, A15-0064, Order (Minn. filed Feb. 3, 2016).

## II.

This case has multiple jurisdictional layers.  The question that the parties initially

---

[1]     In addition to finding that McCullough had objected to the assessment, the court's order following the evidentiary hearing also denied permission to the City to file a motion to reconsider the denial of summary judgment.

4

asked us to address, which was also the subject of the court of appeals' decision, is whether the written-objection requirement in Minn. Stat. § 429.061 is a jurisdictional limitation on Minnesota's *district* courts. Before we can answer the jurisdictional question presented by the parties, however, we must determine whether the City's appeal was taken from a final judgment of the district court, which we have described as a jurisdictional limitation on Minnesota's *appellate* courts. *See T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 788 (Minn. 2009) (discussing the "final judgment" requirement). This case therefore presents the unusual situation in which the answer to the parties' question about the district court's subject-matter jurisdiction hinges upon the antecedent question of whether the court of appeals properly exercised jurisdiction over the City's appeal.

A.

Jurisdiction refers to a court's "power to hear and decide disputes." *State v. Smith*, 421 N.W.2d 315, 318 (Minn. 1988). Whether a court has subject-matter jurisdiction "to hear and determine a particular class of actions and the particular questions" presented generally depends on the scope of the constitutional and statutory grant of authority to the court. *See Robinette v. Price*, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943); *see also Giersdorf v. A & M Constr., Inc.*, 820 N.W.2d 16, 20 (Minn. 2012) ("Subject matter jurisdiction is a court's 'statutory or constitutional *power* to adjudicate the case.' " (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998))). In Minnesota, however, court rules can also define subject-matter jurisdiction, including, for example, the requirement that an appeal in a civil case be taken from a final judgment. *See T.A. Schifsky & Sons*, 773 N.W.2d at 788 (referring to the final-judgment requirement in Minn. R. Civ.

5

App. P. 104.01, subd. 1, as jurisdictional); *see also State v. Barrett*, 694 N.W.2d 783, 786 (Minn. 2005) (holding that the requirement in Minn. R. Crim. P. 28.04, subd. 2(2) that a prosecutor must serve the State Public Defender with notice of a pretrial appeal is jurisdictional).

Courts can question subject-matter jurisdiction at any time, even if the parties to a case have not done so. *See Seehus v. Bor-Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010) (stating that subject-matter jurisdiction cannot be waived by the parties). Our authority to consider subject-matter jurisdiction extends to whether the court of appeals had jurisdiction to decide the appeal. *See Dead Lake Ass'n, Inc. v. Otter Tail Cty.*, 695 N.W.2d 129, 134 (Minn. 2005) (describing the court of appeals' jurisdiction as presenting a "threshold question").

B.

The threshold question for us, which the parties had an opportunity to brief in their supplemental memoranda, is whether the district court's order in this case falls within one of the categories of orders that are immediately appealable to the court of appeals under Minn. R. Civ. App. P. 103.03. Rule 103.03 allows an immediate appeal in a variety of circumstances, but the parties focus first on paragraph (a), which states that "[a]n appeal may be taken to the Court of Appeals . . . from a final judgment, or from a partial judgment entered pursuant to Minn. R. Civ. P. 54.02." The record does not contain an order entering partial judgment under Rule 54.02, and the parties do not contend otherwise.

The district court's order denying summary judgment to the City was also not a "final judgment" because it did not "end[] the litigation on the merits." *T.A. Schifsky &*

*Sons, Inc.*, 773 N.W.2d at 788 (quoting *Riley v. Kennedy*, 553 U.S. 406, 419 (2008)). During the summary-judgment hearing, the district court explained that it denied summary judgment because the factfinder could reasonably conclude that Mr. McCullough's statements and actions at the City Council hearing were sufficient to meet the requirements of Minn. Stat. § 429.081. The court then made clear that its ruling was not final when it immediately turned to other pending matters in the case, including its decision to defer ruling on the constitutionality of the special assessment. The second order, which addressed a motion for reconsideration and the sufficiency of McCullough's objection, also did not end the litigation on the merits. On this record, there is no question that the district court's rulings on the various motions were not a "final judgment."

Indeed, Minn. R. Civ. App. P. 103.03(i) recognizes that orders like these are interlocutory because it requires that, before a party can appeal a denial of summary judgment, district courts must first certify that the "question presented is important and doubtful." The district court did not certify that the requirements of Minn. Stat. § 429.081 presented any "important and doubtful" questions, so Minn. R. Civ. App. 103.03(i) also does not provide a basis for the City's appeal. *See Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 238 (Minn. 2002).

Nor was the order denying the City's motion for summary judgment immediately appealable under Minn. R. Civ. App. P. 103.03(g), which permits a party to appeal from "a final order, decision or judgment affecting a substantial right made in an administrative or other special proceeding." To be sure, we have held that an appeal to a district court from a special assessment qualifies as a "special proceeding" under Rule 103.03(g).

7

*Marzitelli v. City of Little Canada*, 582 N.W.2d 904, 905-06 (Minn. 1998). Even so, the City's appeal was premature because it did not involve a final order, decision, or judgment that "end[ed] the proceedings as far as the [district] court was concerned," *In re Estate of Janecek*, 610 N.W.2d 638, 642 (Minn. 2000), or that "finally determine[d] some positive legal right" belonging to the City, *id.* (quoting *Weinzierl v. Lien*, 296 Minn. 539, 540, 209 N.W.2d 424, 424 (1973)). Rather, as stated above, the district court's denial of summary judgment reflected its conclusion that there were genuine issues of material fact remaining for trial with respect to whether McCullough's words and actions at the City Council hearing satisfied the requirements of Minn. Stat. §§ 429.061, .081. Thus, even if the written-objection requirement qualifies as a "positive legal right" belonging to the City, the district court's interlocutory decision did not finally determine it. *See id.*

## C.

The City's supplemental memorandum focuses primarily on Minn. R. Civ. App. P. 103.03(j), the catchall provision, which allows a party to appeal "from such other orders or decisions as may be appealable by statute or under the decisions of the Minnesota appellate courts." In cases in which we have allowed an appeal to proceed under Rule 103.03(j), "the right to appeal is derived not from procedural rules, but from fundamental principles relating to the finality of judgments." *Kastner*, 646 N.W.2d at 238.

Fundamental principles of finality led us to adopt the collateral-order doctrine, which recognizes a small class of decisions that are immediately appealable prior to the entry of final judgment. *See id.* at 239. For an order to be immediately appealable under the collateral-order doctrine, it must "(1) conclusively determine the disputed question,

8

(2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Id.* at 240.

In this case, the district court's order denying summary judgment to the City arguably satisfies the first requirement, may satisfy the second requirement, but does not satisfy the third requirement. To meet the first requirement, a decision cannot be "tentative, informal or incomplete." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). In this case, the district court made no indication that it intended to reconsider its ruling on the City's summary-judgment motion by designating the decision as "without prejudice" or "subject to revision," which suggests that the order was a conclusive determination on the City's summary-judgment motion.

Whether the district court's order meets the second requirement of the collateral-order doctrine is a closer question. An order satisfies the second requirement when it "raises a question that is significantly different from the questions underlying [the] plaintiff's claims on the merits." *Johnson v. Jones*, 515 U.S. 304, 314 (1995). Although the application of the written-objection requirement in Minn. Stat. § 429.061 is analytically distinct from whether the City's assessment is "invalid and void" because it constitutes an unconstitutional taking, it is debatable whether the written-objection requirement is *completely* separate from the merits of McCullough's claim. After all, the written-objection requirement, whatever its specific obligations, contemplates that any challenges to the assessment, including those that will later be asserted in litigation, will first be presented to the City.

9

Even if the district court's order denying summary judgment satisfies the first and second requirements, however, it does not satisfy the third. Under the third requirement, we must determine whether the right asserted is "adequately vindicable" or "effectively reviewable" after final judgment. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878 (1994). The focus is on the "substance of the rights entailed, rather than the advantage to a litigant in winning his [or her] claim sooner." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (quoting *United States v. MacDonald*, 435 U.S. 850, 860 n.7 (1978)). Although the City would gain an advantage by receiving a definitive ruling on the written-objection requirement before litigating the validity of the assessment, the court of appeals can just as easily interpret and apply the written-objection requirement in an appeal following final judgment, when it has a more complete "record that will permit a better decision." *Johnson*, 515 U.S. at 316-17.

D.

Rather than analyzing the district court's order under the three requirements of the collateral-order doctrine, the City analogizes the written-objection requirement in Minn. Stat. § 429.061 to two other situations in which we have recognized the availability of an immediate appeal. First, we have allowed interlocutory appeals from the denial of motions requesting the dismissal of an action due to a lack of subject-matter jurisdiction. *See McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn. 1995). Second, we have permitted parties to immediately appeal the denial of a claim of immunity. *See Kastner*, 646 N.W.2d at 238-39.

1.

The first class of cases in which we have recognized a right to an immediate appeal is when a district court denies a motion seeking dismissal of an action for lack of subject-matter jurisdiction. *See, e.g.*, *McGowan*, 527 N.W.2d at 833. For such cases, the existence of appellate jurisdiction depends on whether the underlying motion challenged the district court's subject-matter jurisdiction.

*McGowan* involved a plaintiff who suffered a sexual assault at her place of employment, a homeless shelter operated by a church. *See id.* at 832. The church moved to dismiss the negligence action arising out of the assault, arguing that the district court lacked subject-matter jurisdiction because the plaintiff's injury was subject to the Minnesota Workers' Compensation Act. *See id.* at 831-32. We concluded that the court's interlocutory decision was immediately appealable because, "if the [plaintiff's] claim f[ell] within the scope of the Workers' Compensation Act[,] the district court [was] without jurisdiction to proceed further." *Id.* at 833. In ultimately ordering the dismissal of the plaintiff's claim, we emphasized that the church's motion raised a genuine challenge to the district court's subject-matter jurisdiction. *See id.* ("Where the Act provides the employee's exclusive remedy, the district courts have no jurisdiction.").

Under *McGowan*, the district court's order denying summary judgment in this case was immediately appealable if the City's motion raised a genuine challenge to the district court's subject-matter jurisdiction. This means that, if the written-objection requirement in Minn. Stat. § 429.061 is a jurisdictional limitation on the adjudicative authority of Minnesota's district courts, then the court of appeals did not err when it heard the City's

11

appeal. If, however, the written-objection requirement is nothing more than a non-jurisdictional "claim-processing rule," then the rule from *McGowan* did not provide authority for the City's immediate interlocutory appeal. *See Kontrick v. Ryan*, 540 U.S. 443, 453-56 (2004) (describing the differences between "claim-processing rules" and "jurisdictional" rules).

Minnesota's district courts have both the statutory and constitutional authority to decide assessment appeals like the one filed by McCullough. The Minnesota Constitution grants district courts "original jurisdiction in all civil and criminal cases and . . . appellate jurisdiction as prescribed by law." Minn. Const. art. VI, § 3. The statute under which McCullough filed the appeal, Minn. Stat. § 429.081, provides that

> [w]ithin 30 days after the adoption of the assessment, any person aggrieved, who is not precluded by failure to object prior to or at the assessment hearing, or whose failure to so object is due to a reasonable cause, may appeal to the district court by serving a notice upon the mayor or clerk of the municipality.

Clearly, this statute places appeals from assessments within the "classes of cases" over which district courts have "adjudicatory authority," *Kontrick*, 540 U.S. at 455; *see also Giersdorf*, 820 N.W.2d at 20 (stating that subject-matter jurisdiction is the court's statutory and constitutional authority to hear a "particular class of actions" (quoting *Robinette*, 214 Minn. at 526, 8 N.W.2d at 804)). The question remains whether the statute's reference to the "failure to object" makes the written-objection requirement part of the statute's grant of subject-matter jurisdiction to district courts.

Generally, rules of this type can fall into two categories: "claim-processing rules" and "jurisdictional requirements." The key distinction between these two categories is that

12

jurisdictional requirements "cannot be expanded to account for the parties' litigation conduct," *Kontrick*, 540 U.S. at 456, whereas claim-processing rules "assure relief [for the] party properly raising them, but do not compel the same result if the party forfeits them," *Eberhart v. United States*, 546 U.S. 12, 19 (2005).

The written-objection requirement is set forth in Minn. Stat. § 429.061, subd. 2, which specifies that

> [n]o appeal may be taken as to the amount of any assessment adopted under this section unless a written objection signed by the affected property owner is filed with the municipal clerk prior to the assessment hearing or presented to the presiding officer at the hearing. All objections to the assessments not received at the assessment hearing in the manner prescribed by this subdivision are waived, unless the failure to object at the assessment hearing is due to a reasonable cause.

Of particular significance, the two statutes, Minn. Stat. § 429.061 and Minn. Stat. § 429.081, use the terms "waive[r]" and "preclu[sion]" in conjunction with the objection requirement, which is inconsistent with the expression of a requirement that limits the adjudicatory authority of district courts. The use of the word "waived" in both statutes casts substantial doubt on the City's argument that the written-objection requirement is jurisdictional. *Cf. Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn. 2006) ("[S]ubject matter jurisdiction cannot be waived.").

Even more significantly, there is an exception to the written-objection requirement for parties whose "failure to object at the assessment hearing is due to a reasonable cause." Minn. Stat. § 429.061, subd. 2. A rule that allows a case to proceed only if one of the parties has "reasonable cause" for the failure to discharge a statutory requirement is inconsistent with a jurisdictional requirement because a court's adjudicatory authority

13

"cannot be expanded to account for the parties' litigation conduct." *Kontrick*, 540 U.S. at 456. Rather, such a rule, by its very nature, "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," which is one of the hallmarks of a claim-processing rule. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). Indeed, the City does not cite a single case in which we have characterized a statute that allows a party's conduct to excuse its failure to comply with a statutory condition as a jurisdictional requirement.[2]

Our conclusion in this case is consistent with *Rubey*, 714 N.W.2d at 419, in which we addressed a rule that required district courts to hold a hearing on a motion for a new trial within 60 days after service of the notice of the filing of a decision or order. The rule included a provision that permitted the court to extend the time for a hearing "for good cause shown." *Id.* at 420 (quoting Minn. R. Civ. P. 59.03). Relying on *Eberhart*'s

---

[2]    In *State ex rel. City of Minneapolis v. Boucher*, a condemnation case, we stated, without any analysis or discussion, that if "the conditions to the right of appeal are not observed, the court does not acquire jurisdiction." 171 Minn. 297, 300, 214 N.W. 30, 31 (1927). In that case, the property owner had failed to file objections to the amount of proposed damages at least one week before a city-council hearing. *Id.* at 298-99, 214 N.W. at 31. Despite the factual similarities between this case and *Boucher*, it is significant that the statute in *Boucher* did not contain the two characteristics that lead us to conclude here that the written-objection requirement is not jurisdictional. First, the statute did not state that the failure to make an objection constituted "waive[r]" and that it "precluded" the property owner from bringing a case in district court. Second, the statute did not contain an exception that turned on the conduct of the property owner. Moreover, when we referenced jurisdiction in *Boucher*, it is just as likely that we were concluding that the property's owner case could not go forward under the statute as it was that we were saying the court did not have the adjudicatory authority to hear the case. *See Kontrick*, 540 U.S. at 454 (noting that "[j]urisdiction . . . is a word of many, too many, meanings") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)); *Rubey*, 714 N.W.2d at 421 (noting that our case law on jurisdiction "has, at best, been confusing"). For these reasons, *Boucher* does not control the outcome here.

14

discussion of the differences between claim-processing rules and jurisdictional requirements, we held that the 60-day limit was a "procedural tool" that did not "divest the district court of jurisdiction." *Id.* at 422; *see also In re Giem*, 742 N.W.2d 422, 427 (Minn. 2007) (noting that *Rubey* "discussed the difference between deadlines as procedural tools and deadlines operating as jurisdictional limits"). We noted, consistent with our analysis of the written-objection requirement, that the parties cannot waive a subject-matter jurisdiction requirement. *See Rubey*, 714 N.W.2d at 421-22. Accordingly, *Rubey* supports our conclusion in this case that the written-objection requirement is a claim-processing rule rather than a jurisdictional requirement.

The City relies on two other cases, *Andrusick v. City of Apple Valley*, 258 N.W.2d 766 (Minn. 1977) and *In re Skyline Materials, Ltd.*, 835 N.W.2d 472 (Minn. 2013), to support its view that McCullough's failure to file or present a written objection deprived the district court of subject-matter jurisdiction over McCullough's appeal. *Andrusick* and *Skyline Materials* both involved dismissals of appeals from local governmental decisions, one involving a county board of adjustment and the other a city council. We ordered the dismissal of both cases because the landowners had failed to serve the governmental entities in accordance with a statutory requirement in one case, *see Andrusick*, 258 N.W.2d at 766, 768, and the Minnesota Rules of Civil Procedure in the other, *see In re Skyline Materials*, 835 N.W.2d at 473, 477. Although both opinions used the term "jurisdiction"

15

to refer to the inadequate service of process, neither involved subject-matter jurisdiction.[3]

Rather, as we have long held, service of process is the means by which a court obtains personal jurisdiction over a defendant because, unlike subject-matter-jurisdiction defects, parties can waive personal-jurisdiction defects such as inadequate service of process. *See Shamrock Dev., Inc. v. Smith*, 754 N.W.2d 377, 381-82 (Minn. 2008); *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 866-67 (Minn. 2000). Accordingly, neither *Andrusick* nor *Skyline Materials* addresses whether to classify a statutory obligation like the one in this case as a claim-processing rule or a jurisdictional requirement. We therefore rely on *Rubey* to conclude that the written-objection requirement is a claim-processing rule that does not give rise to the right to an immediate interlocutory appeal under *McGowan*.

2.

The second class of cases in which we have recognized a right to an immediate appeal is the denial of a motion seeking immunity. Relying on precedent from the Supreme Court of the United States, we recognized the right to an immediate appeal of immunity decisions in *Kastner*, 646 N.W.2d at 238-39, which involved a non-profit defendant that sought recreational-use immunity and governmental immunity as a recipient of trail funds

---

[3] To be sure, *Skyline Materials* used the phrase "subject-matter jurisdiction," once to characterize the nature of our dismissal of the case, another time to describe how the City had labeled its motion, and a third time in a parenthetical to the *Andrusick* case. *Skyline Materials*, 835 N.W.2d at 473, 474, 478. We are skeptical, however, that the isolated references to subject-matter jurisdiction in *Skyline Materials* were anything more than an oversight on our part. After all, *Skyline Materials* did not purport to overrule our long line of decisions treating insufficient service of process as a defect relating to personal jurisdiction, not subject-matter jurisdiction. In any event, *Rubey* is the most directly analogous case, not *Andrusick* or *Skyline Materials*, because it is undisputed in this case that McCullough properly served its notice of appeal on the City's mayor.

16

from the Minnesota Department of Natural Resources. *Id.* at 236. The rationale for allowing an immediate appeal was the nature of immunity itself, which we characterized as a "right not to stand trial at all—a right that is lost if the case is permitted to proceed." *See id.* at 239 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The City analogizes the written-objection requirement to immunity from suit, asserting that it should not have to defend an assessment when McCullough has failed to satisfy a clear statutory prerequisite for bringing his appeal in district court. But this is precisely the argument that the party that loses a dispositive motion makes in every case in which an interlocutory appeal is unavailable. The party claims that its inability to immediately appeal an allegedly winning argument deprives it of a substantial right. However, unlike immunity, which is "a right that is lost if the case is permitted to proceed," we have already concluded that the question of whether McCullough satisfied the written-objection requirement is something that the court of appeals can consider after the district court enters final judgment. In fact, if anything, the text of Minn. Stat. § 429.081 belies the analogy to immunity because, by recognizing a right for the landowner to appeal an assessment decision, the Legislature has subjected municipalities to suit for assessment decisions, not shielded them from it.

The Supreme Court reached a similar conclusion in a case involving a statutory judgment bar. In *Will v. Hallock*, the Court considered whether an earlier unsuccessful action against the United States constituted a judgment bar against individual government agents who had committed a tortious act. 546 U.S. 345, 348 (2006). The agents moved for judgment on the pleadings based on a provision of the Federal Tort Claims Act that

17

made the prior judgment "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." *Id.* at 348 (quoting 28 U.S.C. § 2676 (2012)). The district court denied the agents' motion and the United States Court of Appeals for the Second Circuit affirmed. *Id.* at 348-49. The Supreme Court vacated the Second Circuit's decision and instructed the Second Circuit to dismiss the appeal. *Id.* at 355.

The Court's analysis recognized that not every "order denying a claim of right to prevail without trial" necessarily falls within the collateral-order doctrine. *Id.* at 351. Otherwise, the Court observed, "almost every pretrial or trial order might be called effectively unreviewable in the sense that relief from error can never extend to rewriting history." *Id.* at 351 (quoting *Digital Equip.*, 511 U.S. at 872) (internal quotation marks omitted). The Court therefore drew a distinction between those cases that involve "mere avoidance of a trial" and those in which "avoidance of a trial" serves "some substantial public interest." *Id.* at 353. Such substantial public interests, according to the Court, include "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual." *Id.* at 352-53.

Despite the fact that the action in *Will* arguably duplicated an earlier lawsuit, the Court declined to treat the judgment bar as comparable to immunity. In this case, even less is at stake than in *Will*. This case does not involve the separation of powers, the efficiency of City officials, or even duplicative litigation. Rather, the City just seeks the "mere avoidance of a trial" unaccompanied by a substantial public interest. Accordingly, in light

18

of *Will*, we decline to treat the written-objection requirement as analogous to a claim of immunity.

## III.

For the foregoing reasons, we dismiss this appeal, vacate the court of appeals' decision, and remand to the district court for further proceedings consistent with this opinion.

Dismissed, vacated, and remanded.

HUDSON, J., took no part in the consideration or decision of this case.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.